IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| TIMMY RAY BENFORD and his wife, | § | |
| MELANIE ELAINE BENFORD | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 1:12-cv-0025 |
| | § | |
| PACCAR, INC.; KENWORTH TRUCK | § | |
| COMPANY, A DIVISION OF PACCAR, | § | |
| INC.; HEIL CO. AND HEIL TRAILER | § | |
| INTERNATIONAL, SUBSIDIARIES OF | § | |
| DOVER CORPORATION; and DOVER | § | |
| CORP. | § | |
| | § | |
|     Defendants. | § | |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Come now Plaintiffs, TIMMY RAY BENFORD and his wife, MELANIE ELAINE BENFORD, complaining of PACCAR, INC.; KENWORTH TRUCK COMPANY, A DIVISION OF PACCAR, INC.; HEIL CO. and HEIL TRAILER INTERNATIONAL, SUBSIDIARIES OF THE DOVER CORPORATION; and DOVER CORP., and for cause of action respectfully show unto the Court the following:

## I.

### PRELIMINARY STATEMENT

1.     This is an action for damages arising from the severe and disfiguring personal injuries suffered by Timmy Ray Benford while driving a heavy truck which was manufactured, sold and distributed by Defendants PACCAR, Inc. and Kenworth Truck Company.

2.     The trailer being pulled by the Kenworth tractor was a tanker trailer that was

manufactured, sold and distributed by Defendant Heil Co. and Heil Trailer International, subsidiaries of Defendant Dover Corporation.

## II.

## PLAINTIFFS

3.     This suit is brought by Plaintiffs **Timmy Ray Benford** (hereinafter "Timmy") and his wife, **Melanie Elaine Benford** (hereinafter "Melanie").  Their residence is 171 Hanson Cove, Giddings, Lee County, Texas.

## III.

## DEFENDANTS

4.     Defendant **PACCAR, Inc.** (hereinafter "**PACCAR**"), is a foreign corporation doing business in the State of Texas.  At the time of the occurrence made the basis of this suit, Defendant **PACCAR** was engaged in the business of designing, manufacturing, marketing and selling large tractors (heavy trucks), including the subject 2010 Kenworth tractor (vehicle identification number: 1XKDD49XXAJ272214).  Defendant **PACCAR** may be served with process in this case by serving its agent for service of process in Texas: The Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5.     Defendant **Kenworth Truck Company, a division of PACCAR, Inc.** (hereinafter "**KENWORTH**"), is a foreign corporation doing business in the State of Texas.  At the time of the occurrence, Defendant **KENWORTH** was engaged in the business of designing, manufacturing, marketing and selling tractors (heavy trucks), including the subject 2010 **KENWORTH** tractor (vehicle identification number: 1XKDD49XXAJ272214) being pulled by the subject Kenworth tractor.  Defendant **KENWORTH** may be served by serving Defendant **PACCAR's** agent for the service of process in Texas:  The Prentice-Hall Corporation System,

ORIGINAL COMPLAINT                                                                              PAGE 2

211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.     Defendant **Heil Co.** (hereinafter "**HEIL**") is a foreign corporation and a subsidiary of the Dover Corporation.  At the time of the occurrence, Defendant **HEIL** was engaged in the business of designing, manufacturing, marketing and selling trailers to be pulled by heavy trucks, including the subject 2010 **HEIL** tanker trailer (vehicle identification number:1XKDD49XXAJ272214) being pulled by the subject Kenworth tractor.  Defendant **HEIL** may be served with process in this case by serving its agent for the service of process in Texas: Prentice-Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

7.     Defendant **Heil Trailer International** (hereinafter "**HEIL TRAILER**") is a foreign corporation doing business in the State of Texas.  At the time of the occurrence, Defendant **Heil Trailer** was engaged in the business of designing, manufacturing, marketing and selling trailers, including the subject 2010 **HEIL** tanker trailer (vehicle identification number:1XKDD49XXAJ272214).  Defendant, **HEIL TRAILER** may be served with process in this case by serving its agent for service of process in Texas, National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston, Texas 77062.

8.     Defendant **Heil** and Defendant **Hail Trailer** are subsidiaries of the Defendant **Dover Corporation** (hereinafter "**DOVER**").  Dover Corporation, is a foreign corporation doing business in the State of Texas, and it may served by mail to the Texas Secretary of State for mailing to Dover Corporation, 280 Park Avenue, Floor-34-W, New York, New York, 10017-1292.

## IV.

## JURISDICTION

9.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) (1) in that it is an action between citizens of different states and the amount in controversy exceeds $75,000.

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that it is an action between citizens of different states and the amount in controversy exceeds $75,000.

11.    The Court has personal jurisdiction over the Defendant because Plaintiffs' claims arise from the Defendants:

> a.     transacting business in the State of Texas;
>
> b.     contracting to supply services or things in the State of Texas;
>
> c.     causing serious injury by an act or omission in the State of Texas; and/or
>
> d.     causing serious injury in the State of Texas by an act or omission outside of the State of Texas and regularly doing and soliciting business and engaging in other persistent courses of conduct, and deriving substantial revenue from goods used or consumed or services rendered in the State of Texas.

## V.

## VENUE

12.    This Court has venue pursuant to 28 U.S.C. § 1391 because, as detailed herein, a substantial part of the events giving rise to the claims asserted in this action arose in this judicial District.

## VI.

### THE SUBJECT INCIDENT

13.      On September 12, 2010, Plaintiff Timmy Benford was employed as a heavy truck driver by Gulfmark Energy, Inc. of Houston, Texas.  At about 6:30 pm on September 12, 2010, Mr. Benford was driving a 2010 **KENWORTH** tractor (VIN: 1XKDD49XXAJ272214) and was headed east on FM 60 in Burleson County, Texas, about one tenth (.10) miles from the intersection of FM 60 and FM 424.  The tractor was pulling a 2010 **HEIL** tanker trailer (VIN: 5HTDL452655G21097) manufactured by Defendant **HEIL, HEIL TRAILER INTERNATIONAL and DOVER**.

14.      Farm-Market 60 is a narrow one lane paved road in Burleson County.  As the subject tractor and trailer got near a bend or curve in the road, a truck was approaching on the other side headed in the opposite direction.  The opposing truck was being driven close to and partly into Timmy Benford's lane of travel.  To avoid contact with an approaching vehicle, Timmy Benford then moved his tractor and trailer over slightly to his right and the tires on the right side of his tractor and trailer went off of the roadway.  When Timmy Benford moved his right side wheels back onto the road, the tractor and trailer went into a rollover which caused the roof structure of the tractor to collapse.  The subject tractor and trailer rolled one or more times before stopping. When the roof structure of the tractor collapsed, some of the roof structure intruded into the driver's space and contacted Timmy Benford's head and neck, causing severe injuries to him.

## VII.

### STRICT LIABILITY AND NEGLIGENCE OF PACCAR AND KENWORTH

15.      The 2010 **KENWORTH** tractor being driven by Timmy Benford on September 12, 2010 was inherently unstable.  It had a high center of gravity and a propensity to go into a rollover

2e

during certain movements of the tractor and trailer.  The design of the tractor by Defendants **PACCAR** and **KENWORTH** did not prevent rollovers of the tractor and trailer.  Moreover, the design of the tractor by these Defendants did not prevent the collapse of the cab structure and the roof structure of the tractor or the intrusion into the driver's space of the roof structure during a rollover.  The intrusion into the driver's space often results in serious injuries or death to the driver.  As a result, **PACCAR** and **KENWORTH** are strictly liable and negligent in one or more of the following ways:

    a.    The roof structure of the **KENWORTH** 2010 tractor was defectively designed in that it was not strong enough to withstand a foreseeable event like a rollover of the tractor and trailer.  Instead, the roof structure during a rollover would collapse and portions of the roof structure would intrude into the driver's space.  In this case, the intruding roof structure impacted Mr. Benford's body and caused severe injuries to him.  As a result, he was made a quadriplegic.

    b.    The "A" and "B" pillars of the subject tractor were defectively designed in that they would collapse during a rollover.  The failure of the "A" and "B" pillars in this case resulted in the collapse of the roof structure during the rollover and the intrusion of portions of the roof structure into the driver's space, with resulting severe injuries to Mr. Benford, the driver.

    c.    The roof structure and the "A" and "B" pillars of the tractor were defectively designed in that they were not strong enough to prevent their collapse and intrusion into the driver's space.

    d.    The subject **KENWORTH** tractor was also defectively designed with insufficient clearance between the driver's head and the ceiling of the subject tractor.

e.      The subject **KENWORTH** tractor was defectively designed without sensors which would sense an impending yaw or rollover and would then drop the driver's seat to a lower point in the tractor in order to increase the clearance between the driver's head and the ceiling of the subject tractor.

f.      The subject **KENWORTH** tractor was defectively designed without a warning system on the tractor that would warn Mr. Benford of impending yaws and rollovers of the subject tractor and the subject trailer.

g.      The subject **KENWORTH** tractor was defectively designed without electronic stabilization control (ESC) which would take over the application of the brakes on the subject tractor and subject trailer and thus prevent a rollover.

h.      Defendants **KENWORTH** and **PACCAR** knew that a rollover protection system (ROPS) would prevent a collapse of the roof structure and would therefore protect drivers from serious injury or death as the result of a rollover and the intrusion of the roof structure into the driver's space during a rollover.   In spite of this knowledge, **KENWORTH** and **PACCAR** did not install a ROPS, a warning system or an Electronic Stabilization Control in the **KENWORTH** subject tractor.

16.     In summary, these design defects result in strict liability for Defendants **PACCAR** and **KENWORTH** in the occurrence in question on September 12, 2010.  Moreover, these same design defects also constitute negligence of **PACCAR** and **KENWORTH**.  These design defects are the proximate and producing causes of the subject incident, the collapse of the roof structure and the intrusion of portions of the roof structure into the driver's space with resulting severe injuries to Mr. Benford, the driver.

**ORIGINAL COMPLAINT**                                                                         **PAGE 7**

**VIII.**

**STRICT LIABILITY AND NEGLIGENCE OF HEIL AND DOVER**

17.     On September 12, 2010, the subject 2010 **KENWORTH** tractor was pulling a 2010 **HEIL** tanker trailer (VIN: 5HTDL452655G21097).  The subject 2010 **HEIL** tanker trailer was also inherently unstable.  It had a high center of gravity and it had a propensity to rollover during certain movements of the tractor and trailer.  As a result, Defendants **HEIL, HIEL TRAILER** and **DOVER** are strictly liable and negligent in one or more of the following ways:

    a.      In failing to design the **HEIL** tanker trailer with an Electronic Stabilization Control (ESC) which would take over during an impending yaw or rollover of the tractor and trailer, selectively applying the brakes on the trailer and thus assisting in preventing a rollover of the subject tractor and the subject trailer.

    b.      In failing to design the subject **HEIL** trailer with a warning system that would warn the drivers of the tractors pulling a **HEIL** trailer of impending yaws or rollovers of the **HEIL** trailer.

18.     These design defects created by Defendants **HEIL,  HIEL TRAILER** and Defendant **DOVER** form the basis of the negligence and strict liability of Defendants **HEIL**, **HIEL TRAILER** and **DOVER** and were proximate and producing causes of the occurrence in question and the resulting severe injuries to Timmy Benford.

**IX.**

**DAMAGES**

19.     The negligence and gross negligence of the Defendants caused the subject heavy truck being driven by Timmy Benford and its attached trailer to rollover.  As a result of the rollover, the weak roof structure and the weak cab structure collapsed.  When the cab structure and the

roof collapsed and made contact with Timmy Benford's body, his spine was catastrophically injured and his sternum, ribs, lungs, head, face, left shoulder, right hand and teeth were seriously injured.  Mr. Benford was air-lifted from the scene of the incident to Scott & White Memorial Hospital in Temple, Texas for emergency services

20.     Specifically, Timmy Benford suffered cervical and thoracic fractures that left him paralyzed, including:

      a.      A longitudinal fracture of his C2 vertebra;

      b.      A left transverse process fracture of his C3 vertebra;

      c.      A superior articular and transverse process fracture of his C4 vertebra;

      d.      Spinous process fractures of his C5 vertebra and C6 vertebra; and

      e.      A lamina fracture of his T1 vertebra.

Timmy Benford underwent orthopedic spinal surgery on September 13, 2010, to relieve pressure on his spinal cord and to help stabilize his spine.

21.     Timmy Benford was transferred from Scott & White to Craig Hospital in Denver, a hospital that specializes in complex spinal injuries and traumatic brain injuries.  As a result of Timmy Benford's spinal cord injuries and trauma, his doctors diagnosed him as a "C-4 incomplete quadriplegic".

22.     After his stay in Craig Hospital for about two (2) months, Timmy Benford was returned to Texas.  He was an in-patient at Cedar View Rehabilitation Center in Austin, Texas from December 2010 to March 2011; St. David's Hospital in Austin, Texas from April 2011 to May 2011; and Texas NeuroRehab Center in Austin, Texas from September 2011 to January 2012. It was not until May 2011 that Timmy Benford was able to return to his home in Giddings, Texas for the first time.  Since that time, Timmy Benford has had to be transported about 120 miles to

and from his home in Giddings to Austin, Texas, three to four days a week, in order that he can attend physical therapy sessions.

23.     Timmy Benford is still undergoing extensive physical therapy for his spinal injuries. With respect to his current motor functions, Timmy Benford has:

      a.      Little or no movement in his lower extremities;

      b.      Little or no movement in his left upper extremities;

      c.      Limited movement in right upper and lower extremities; and

      e.      Limited movement of his neck.

24.     Timmy Benford also suffered significant pulmonary and respiratory trauma as a result of the subject incident. He also suffered a pneumothorax to his right lung and was put on a ventilator at Scott & White hospital because he was unable to breathe on his own.  After Timmy Benford was stabilized in Scott & White hospital, he was flown to Craig Hospital in October 2010.  Timmy Benford was hospitalized in Craig Hospital for about two (2) moths.

25.     Timmy Benford has also developed serious bed sores on his back from time-to-time and has had to be hospitalized to treat the bed sores.  The bed sores have been extremely painful. Timmy Benford was confined in Craig Hospital for about two (2) months.

26.     Timmy Benford cannot urinate without the assistance of medical equipment.  On or about October 2010, he underwent a surgical procedure to insert a supra pubic tube directly into his bladder.  To this day, Timmy Benford still relies on the surgically inserted tube to urinate.

27.     Timmy Benford suffered other serious injuries as a result of the incident, including but not limited to:

      a.      head trauma and facial lacerations;

      b.      a broken sternum;

    c.       broken ribs;

    c.       broken teeth; and

    d.       malfunctioning tear ducts.

28.    Timmy Benford also required the assistance of a feeding tube for about a month after the incident.  It was not until his transfer to Craig Hospital in Colorado in October 2010, that it was removed.

29.    Timmy Benford takes seventeen (17) daily medications and another nine (9) medications as needed, as a result of his injuries.  The medications address and assist Timmy's nutrition, blood thinning, muscle toning, fighting infections, relaxation, stool softening, depression, nausea, dry eyes, physical pain, and breathing.

30.    Due to his injuries, Mr. Benford can no longer perform - or without assistance perform - the following activities of daily living ("ADLs"):

    a.       walk or move from one place to another;

    b.       dress and groom himself;

    c.       oral hygiene;

    d.       clean his buttocks after relieving himself;

    e.       set-up his meal to eat;

    f.       cooking and cleaning in the kitchen;

    g.       performing household duties around his home and mechanical maintenance on their vehicles;

    h.       driving a vehicle; or

    i.       managing his finances.

31.     Prior to September 12, 2008, Timmy Benford was actively involved with his family, friends and community before the rollover incident.  Timmy Benford can no longer perform and enjoy recreational activities such as running, walking, fishing, playing basketball in the park, shopping, dining out, going to the movies, lifting weights and relaxing at home.  Timmy Benford and his wife, Melanie, no longer have sexual intimacy.  In addition, Timmy Benford can no longer enjoy singing in his church choir or mentoring kids and young adults in his church's Student Ministry.  In sum, Mr. Benford's enjoyment of daily life is virtually gone due to his immobility, constant pain, lack of social interaction and constant need of assistance from his wife or a nurse.

32.     Additionally, Mr. Benford has lost his ability to work and provide income for his family. At the time of the collision, Timmy Benford was employed as a truck driver for Gulfmark Energy, Inc. and was earning approximately $58,000.00 per year.  He has sustained lost earnings in the past and loss of future earning capacity.

33.     Accordingly, Plaintiff, Timmy Ray Benford, Individually seeks the following elements of damage which exceed the minimum jurisdictional limits of this Court:

   a.      Medical expenses in the past;

   b.      Medical expenses that, in reasonable probability, he will incur in the future;

   c.      Loss of earnings in the past;

   d.      Loss of earning capacity that, in reasonable probability, he will sustain in the future;

   e.      Physical pain, suffering and mental anguish in the past;

   f.      Physical pain, suffering and mental anguish that, in reasonable probability, he will suffer in the future;

   g.      Disfigurement in the past;

h.      Disfigurement that, in reasonable probability, he will suffer in the future;

i.      Physical impairment in the past;

j.      Physical impairment that, in reasonable probability, he will suffer in the future;

k.      Other reasonable consequential damages ; and

l.      Exemplary damages pursuant to Texas Civil Practice and Remedies Code Chapter 41.

34.     Plaintiff, Melanie Benford, Individually seeks the following elements of damage which exceed the minimum jurisdictional limits of this Court:

a.      Nursing services past and future;

b.      Assistance for Timmy's ADLs, past and future;

c.      Household services, past and future;

d.      Loss of consortium in the past;

e.      Loss of consortium that, in reasonable probability, she will incur in the future;

f.      Other reasonable consequential damages ; and

g.      Exemplary damages pursuant to Texas Civil Practice and Remedies Code Chapter 41.

35.     In summary, Plaintiffs are entitled to and here and now sue for damages as a result of the negligence and violations of strict liability by Defendants in the just and reasonable sum of THIRTY MILLION DOLLARS ($30,000,000).

## X.

## GROSS NEGLIGENCE AND PUNITIVE DAMAGES

36.     The Plaintiffs again allege and repeat each and every allegation of misconduct contained in paragraphs 13 through 18 of this Complaint and incorporate each paragraph as if fully set forth

herein.   As a result, **Defendants PACCAR**, **KENWORTH, HEIL, HEIL TRAILER** and **DOVER** are guilty of gross negligence and punitive damages in one or more of the following ways:

a.      The cab structure and the roof structure of the **KENWORTH** 2010 tractor was defectively designed in that they were not strong enough to withstand a foreseeable event like a rollover of the tractor and trailer.   Instead, the roof structure and cab structure will collapse during a rollover and portions of the roof structure will intrude into the driver's space.   In this case, the intruding roof structure impacted Mr. Benford's body and caused severe injuries to him.   As a result, he was made a quadriplegic.

b.      The "A" and "B" pillars of the subject tractor were defectively designed in that they would collapse during a rollover.   The failure of the "A" and "B" pillars in this case resulted in the collapse of the cab structure and the roof structure during the rollover and the intrusion of portions of the cab structure and the roof structure into the driver's space, with resulting severe injuries to Mr. Benford.

c.      The cab structure and the roof structure and the "A" and "B" pillars of the tractor were defectively designed in that they were not strong enough to prevent their collapse and intrusion into the driver's space.

d.      The subject **KENWORTH** tractor was also defectively designed with insufficient clearance between the driver's head and the ceiling of the subject tractor.

e.      The subject **KENWORTH** tractor was defectively designed without a device which would sense an impending yaw or rollover and would then warn the driver and drop the driver's seat to a lower point in the tractor in order to increase the

clearance between the driver's head and the ceiling of the subject tractor.

f.    The subject **KENWORTH** tractor was defectively designed without a warning system on the tractor and trailer that would warn the driver of **KENWORTH** tractor pulling a **HEIL** trailer of impending yaws and rollovers of the subject tractor and the subject trailer.

g.    The subject **KENWORTH** tractor was defectively designed without electronic stability control (ESC) which would take over the application of the brakes on the subject tractor and subject trailer and thus prevent a rollover.

h.    Defendants **KENWORTH, PACCAR, HEIL, HEIL TRAILOR** and **DOVER** knew that a rollover protection system (ROPS) would protect drivers from serious injury or death as the result of a rollover and the intrusion of the roof structure into the driver's space.  In spite of this knowledge, these Defendants did not install a ROPS, a warning system or an Electronic Stability Control on the subject tractor and subject trailer.

37.    Defendants **KENWORTH, PACCAR, HEIL, HEIL TRAILER** and **DOVER** were grossly negligent in that they were had knowledge of the risks, hazards and dangers posed by the defective design of the subject heavy truck and the defective design of the subject trailer. Therefore, these Defendants knew that the cab structure and the roof structure were grossly inadequate to protect drivers of heavy trucks like Mr. Benford during a rollover.   These Defendants also knew that the subject tractor and trailer had a propensity to rollover and that these vehicles did not have any device to warn drivers or to prevent rollovers.

38.    Defendants **PACCAR** and **KENWORTH** had knowledge that there was an extreme degree of risk, considering the probability and magnitude of the potential harm to others, in

selling the subject heavy truck in its defective condition.

39.     Defendants **HEIL, HEIL TRAILER** and **DOVER**, knew that there was an extreme degree of risk, considering the probability and magnitude of the potential harm to others, in selling the subject trailer in its defective condition.

40.     Defendants **PACCAR, KENWORTH, HEIL, HEIL TRAILER and DOVER** nonetheless proceeded to manufacture and sell these subject heavy trucks and trailers with conscious indifference to the rights, safety and welfare of others who might be harmed by the rollovers of the subject heavy truck and trailers, including the driver, Timmy Benford.

41.     Defendants **HEIL, HEIL TRAILER** and **DOVER** were also grossly negligent in that they had knowledge of the risks posed by the defective condition of the subject tanker trailer, including the fact that the trailer itself was known to enhance and cause rollovers of heavy trucks and that the subject tanker trailer did not have Electronic Stability Control (ESC) to prevent rollovers and a warning system that would warn the driver of the subject tractor of impending yaws or rollovers of the subject trailer.

42.     Defendants **HEIL, HEIL TRAILER** and **DOVER** were also aware that there was an extreme degree of risk, considering the probability and magnitude of the potential harm to others, in selling the subject tanker trailer in its defective condition.

43.     Defendant **HEIL, HEIL TRAILER** and **DOVER** nonetheless proceeded to manufacture and sell the subject tanker trailer with conscious indifference to the rights, safety and welfare of others who might be harmed by the subject tanker trailer.

44.     Plaintiffs are therefore entitled to punitive damages for the gross negligence of these Defendants in the just and reasonable sum of TEN MILLION DOLLARS ($10,000,000.00).

## XI.

## JURY DEMAND

45.     Plaintiffs hereby request a jury on all issues so triable.

## XII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, your Plaintiffs pray that all of the Defendants be cited in terms of the law to appear and answer herein and that, upon final trial and hearing hereof, your Plaintiffs, TIMMY RAY BENFORD and his wife, MELANIE ELAINE BENFORD, have judgment against the Defendants PACCAR, INC.; KENWORTH TRUCK COMPANY, A DIVISION OF PACCAR, INC.; HEIL CO. and HEIL TRAILER INTERNATIONAL, subsidiaries of the DOVER CORPORATION; and DOVER CORP., jointly and severally, for actual damages in the amount of THIRTY MILLION DOLLARS ($30,000,000.00) and for punitive damages in the just and reasonable sum of TEN MILLION DOLLARS ($10,000,000.00). Your Plaintiffs also pray for pre-judgment and post-judgment interest at the legal rates and in the amounts provided by law, and for such other and further relief, both general and special, at law and in equity, to which they may be justly entitled and for which they will ever pray.

This 13th day of March, 2012.

Respectfully submitted,


By: _____/s/_____
MARK B. BLACKBURN
State Bar No. 02388990
BLAKE C. ERSKINE, JR.
State Bar No. 00786383
ERSKINE & BLACKBURN, L.L.P.

**ORIGINAL COMPLAINT**                                                              **PAGE 17**

6618 Sitio Del Rio Blvd., Bldg. C-101
Austin, Texas  78730
Telephone: (512) 684-8900
Facsimile:  (512) 684-8920

**ATTORNEYS FOR PLAINTIFFS**